IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| DEBRA ANN MELLIN,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>NANCY BERRYHILL, Acting Commissioner of the Social Security Administration,<br><br>　　　　　Defendant. | CV 18-53-GF-JTJ<br><br>**MEMORANDUM AND ORDER** |

## **INTRODUCTION**

Plaintiff Debra Ann Mellin (Mellin) brought this action to obtain judicial review of the final decision of the Acting Commissioner of the Social Security Administration (Commissioner), denying her application for disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-433.

## JURISDICTION

The Court has jurisdiction over this action under 42 U.S.C. § 405(g). Venue is proper given that Mellin resides in Cascade County, Montana. 29 U.S.C. § 1391(e)(1); L.R. 1.2(c)(3). The parties have consented to have the undersigned conduct all proceedings in this matter and enter judgment. (Doc. 7).

## BACKGROUND

Mellin filed her application for disability benefits on March 31, 2011. (Doc. 3 at 408-414). Mellin alleged a disability onset date of August 6, 2010. (Doc. 3 at 408). Mellin alleged that she became disabled due to injuries to her left ankle and left shoulder, depression, anxiety, and human immunodeficiency virus (HIV). (Doc. 3 at 492). Mellin is 59 years old. (Doc. 3 at 408). Mellin has a high school education. (Doc. 3 at 81). Mellin has also attended college for two years. *Id*. Mellin has past work experience as a general office clerk from 2007 through August 2010. (Doc. 3 at 27).

An administrative law judge (ALJ) conducted a hearing on Mellin's application for social security benefits on October 25, 2012. (Doc. 3 at 126-158). The ALJ issued her decision on December 5, 2012. (Doc. 3 at 185-194). The ALJ determined that Mellin did not qualify for disability or disability insurance benefits. (Doc. 3 at 194).

Mellin requested that the Social Security Administration (Administration) review the ALJ's decision. The Administration granted Mellin's request. The Administration remanded the case on July 7, 2014. (Doc. 3 at 199-202). The Administration directed the ALJ to address multiple errors. *Id*.

An ALJ conducted a second hearing on Mellin's application for social security benefits on March 3, 2015. (Doc. 3 at 72-125). The ALJ issued his decision on April 13, 2015. (Doc. 3 at 207-220). The ALJ determined the Mellin was not disabled. (Doc. 3 at 220). Mellin requested that the Administration review the ALJ's decision. The Administration granted Mellin's request. The Administration determined that a remand was appropriate given that the ALJ had incorrectly stated the date that Mellin was last insured for disability benefits. (Doc. 3 at 229-231).

An ALJ conducted a third hearing on Mellin's application for social security benefits on May 9, 2017. (Doc. 3 at 39-71). The ALJ issued his decision on June 1, 2017. (Doc. 3 at 15-29). The ALJ determined that Mellin had a number of severe impairments. (Doc. 3 at 17). The ALJ determined that Mellin was not disabled despite her impairments. The ALJ concluded that Mellin possessed the residual functional capacity to perform her past relevant work as a general office clerk, and she could also work as an order clerk or appointment clerk. (Doc. 3 at

26, 28).

Mellin requested that the Administration review the ALJ's decision. The Administration denied Mellin's request. (Doc. 3 at 1-3). The Administration's denial made the ALJ's decision the final decision of the Commissioner. *Id*.

Mellin filed the present action on March 9, 2018. (Doc. 1). The matter has been fully briefed. (Docs. 10,11,12). The Court is prepared to rule.

## **STANDARD OF REVIEW**

The Court's review in this matter is limited. The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence has also been described as "more than a mere scintilla" but "less than a preponderance." *Desrosiers v. Sec. of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988).

## **BURDEN OF PROOF**

A claimant is disabled for purposes of the Social Security Act if the claimant demonstrates by a preponderance of the evidence that (1) the claimant has a

"medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months;" and (2) the impairment or impairments are of such severity that, considering the claimant's age, education, and work experience, the claimant is not only unable to perform previous work but also cannot "engage in any other kind of substantial gainful work which exists in the national economy." *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000) (citing 42 U.S.C. §1382(a)(3)(A),(B)).

The Social Security Administration regulations provide a five-step sequential evaluation process for determining whether a claimant is disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953-954 (9th Cir. 2001); 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof under steps one through four. *Bustamante*, 262 F.3d at 954. The Commissioner bears the burden of proof under step five. *Id.* The five steps of the inquiry are:

1. Is the claimant presently working in a substantially gainful activity? If so, the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2. Is the claimant's impairment severe? If so, proceed to step three. If not, the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1? If so, the claimant is disabled. If not, proceed to step four. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

4. Is the claimant able to do any work that he or she has done in the past? If so, the claimant is not disabled. If not, proceed to step five. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

5. Is the claimant able to do any other work? If so, the claimant is not disabled. If not, the claimant is disabled. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Bustamante*, 262 F.3d at 954.

## **BACKGROUND**

### A. **ALJ's determination**

At step one, the ALJ determined that Mellin had not engaged in substantial gainful activity from her alleged onset date of August 6, 2010, through September 30, 2014, the date she was last insured. (Doc. 3 at 17).

At step two, the ALJ found that Mellin had the following severe impairments: obesity, bilateral hip sprain/strain with bilateral trochanteric bursitis, status-post open reduction internal fixation of the left ankle with revision in April 2011, subtalar arthritis, bilateral sub deltoid shoulder bursitis and left shoulder tendinitis, reactive airway disease, and depressive disorder. (Doc. 3 at 17). The ALJ also found that Mellin had a non-severe impairment based upon her HIV. (Doc. 3 at 18).

At step three, the ALJ found that Mellin did not have an impairment, or combination of impairments, that met or was medically equal to one of the listed impairments. (Doc. 3 at 18).

Before considering step four, the ALJ determined Mellin's residual functional capacity. The ALJ determined that Mellin possessed the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) subject to the following limitations: 1) Mellin can stand or walk for about 4 hours in an 8-hour workday; 2) Mellin can sit for about 6 hours in an 8-hour workday; 3) Mellin can occasionally push or pull with her left upper extremity, occasionally push or pull with her left lower extremity (never using foot controls); 4) Mellin can climb ramps or stairs occasionally but can never climb ladders, ropes or scaffolds; 5) Mellin can occasionally balance, stoop, kneel, crouch and crawl; 6) Mellin can occasionally reach with her left upper extremity (including overhead); 7) Mellin must avoid concentrated exposure to extreme cold, vibration, and hazards such as unprotected heights and dangerous machinery; 8) Mellin can occasionally walk on rough or uneven walking surfaces; 9) Mellin cannot interact with large groups of people, but she can interact with two or three people at a time occasionally; 10) Mellin can only perform work that requires no more than occasional new learning; and 11) Mellin cannot perform work that requires high constant focus, such as

7

assembly line type work. (Doc. 3 at 22).

At step four, the ALJ presented a hypothetical question to a vocational expert. The ALJ asked the vocational expert to consider a hypothetical person with the same age, work experience and educational background as Mellin who possessed the limitations described above. (Doc. 3 at 65-66, 117-119). The vocational expert responded that such a hypothetical person could perform Mellin's past work as a general office clerk. (Doc. 3 at 66-67, 119-120).

The ALJ determined at step four that Mellin was not disabled. (Doc. 3 at 29). The ALJ determined that Mellin possessed the residual functional capacity to perform her past relevant work as a general office clerk. (Doc. 3 at 26). The ALJ determined that Mellin also possessed the residual functional capacity to perform other work as an order clerk or appointment clerk. (Doc. 3 at 28).

### B. Mellin's Position

Mellin argues that the Court should reverse the Commissioner's decision and remand the case to the Commissioner for either an award of benefits or for further proceedings. (Doc. 10 at 19). Mellin argues that the Commissioner's decision should be reversed for the following reasons:

1. The ALJ erred by failing to provide specific, clear and convincing reasons for discrediting her testimony regarding her symptoms and limitations; and

2. The ALJ erred by failing to consider all of her physical and mental impairments when he determined her residual functional capacity.

(Doc. 10 at 10-18).

**C. Commissioner's Position**

The Commissioner argues that the Court should affirm the ALJ's decision because his decision was based on substantial evidence and was free of legal error.

## DISCUSSION

**A. Mellin's Testimony Regarding her Symptoms and Limitations**

Mellin testified at first hearing on October 25, 2012, and the second hearing on March 3, 2015. (Doc. 3 at 79-111, 132 -147). Mellin testified her ability to walk was limited to approximately 20 minutes at a time due to pain in her left ankle and hips. (Doc. 3 at 138). Mellin testified that she had used a cane for stability since August 2010. (Doc. 3 at 84). Mellin testified that her ability to stand was limited to approximately to 15 to 20 minutes at a time. (Doc. 3 at 86). Mellin testified that she obtained relief from her left foot and hip pain by elevating her left leg at least two times per day for approximately 20 minutes each time. (Doc. 3 at 85, 145-146). Mellin testified that her ability to sit was limited to approximately 30 minutes at a time. (Doc. 3 at 139). Mellin testified that her physical activities were limited to approximately 4 hours per day. (Doc. 3 at 147). Mellin testified that she scheduled her activities so she did not have to leave her

home on two consecutive days. (Doc. 3 at 139).

Mellin testified that her anxiety and depression issues had an adverse affect on her ability to concentrate and focus. (Doc. 3 at 90). Mellin testified that she had difficulty with reading comprehension. Mellin testified that had to re-read newspaper articles several times to understand them. (Doc. 3 at 99). Mellin's testimony was corroborated by the testimony of Dr. Raphael Kuka, Ph.D. Dr. Kuka testified at the March 3, 2015, hearing. Dr. Kuka testified that Mellin generally had significant limitations with concentration, persistence and pace due to her depression and anxiety, and marked limitations on "bad days." (Doc. 3 at 114).

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). Rather, the claimant need only show that her impairment could

reasonably have caused some degree of the symptom. *Id*.

If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ may reject the claimant's testimony about the severity of her symptoms "only by offering specific, clear and convincing reasons for doing so." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The ALJ must "specifically identify the testimony [from a claimant] she or he finds not to be credible and . . . explain what evidence undermines the testimony." *Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (citing *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir.2001)). That means "[g]eneral findings are insufficient." *Id.* (citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir.1995)). The ALJ's findings must be sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

The ALJ may use "ordinary techniques of credibility evaluation" to weigh a claimant's credibility. *Smolen*, 80 F.3d at 1284. The ALJ may consider: the claimant's reputation for truthfulness; inconsistencies in the claimant's testimony; inconsistencies between the claimant's testimony and her conduct, the claimant's daily activities and work record; and the testimony of physicians and third parties concerning the nature, severity, and effect of the claimant's alleged symptoms.

*Thomas v. Barnhart*, 278 F.3d 947, 958-959 (9th Cir. 2002).

Here, the ALJ found that Mellin had, in fact, presented objective medical evidence of impairments that could reasonably be expected to produce the pain and symptoms she alleged. (Doc. 3 at 23). The ALJ nevertheless discounted Mellin's testimony regarding her inability to walk or stand more than 20 minutes at a time, and sit more than 30 minutes at a time. (Doc. 3 at 23). The ALJ stated that he discounted Mellin's testimony regarding her limited ability to walk, stand and sit because Mellin had described daily activities that were inconsistent with her claimed limitations. (Doc. 3 at 23). Specifically, the ALJ noted that Mellin had reported that "[s]he [was] able to prepare meals, do minimal household chores, drive, shop for groceries and other household items, handle money, and take care of a pet" and "work[] in her garden." (Doc. 3 at 23).

The ALJ stated that she also discounted Mellin's testimony regarding her limited ability to walk, stand and sit because her claimed limitations were not supported by the medical evidence. The ALJ did not describe, however, the medical evidence that was inconsistent with Mellin's claimed limitations. The ALJ merely summarized the medical evidence and offered the following conclusory statements:

> "[T]he claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other

evidence in the record for the reasons explained in this decision."

(Doc. 3 at 23-26).

The ALJ committed legal error when he rejected Mellin's testimony regarding her limited ability to walk, stand and sit. The ALJ failed to provide specific, clear and convincing reasons for rejecting Mellin's testimony. *Lingenfelter*, 504 F.3d at 1036. The ALJ failed to explain how Mellin's daily activities undermined her testimony regarding her limited ability to walk, stand and sit. The ALJ also identified no specific medical evidence that was inconsistent with Mellin's claimed limitations. The ALJ merely summarized the medical evidence and noted that some of Mellin's medical treatment was "conservative." (Doc. 3 at 23-26). The ALJ's general conclusory statements regarding the medical evidence were not sufficient. *Berry*, 622 F.3d at 1234.

The ALJ, on remand, must reassess Mellin's credibility. The ALJ must specifically identify the portion(s) of Mellin's testimony that he finds not credible, explain what evidence undermines Mellin's testimony, and explain why. *Treichler*, 775 F.3d 1102-03. Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for the Court to meaningfully determine whether the ALJ's conclusions regarding Mellin's credibility were supported by substantial evidence. *Id.* at 1103.

13

**B.     The ALJ's Assessment of Mellin's Residual Functional Capacity**

Mellin argues that the ALJ erred when he determined her residual functional capacity. Mellin argues that the ALJ erred in the following two ways: 1) the ALJ failed to consider her HIV impairment and resulting limitations, including fatigue, when he formulated her residual functional capacity; and 2) the ALJ failed to address her ability to perform work-related activities on a regular and continuing basis. (Doc. 10 at 16-17).

Residual functional capacity is an assessment of a claimant's ability to perform work-related physical and mental work activities on a regular and continuing basis despite the limitations caused by her impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a); SSR 96-8p. When determining residual functional capacity, an ALJ must consider all of the claimant's impairments, including impairments that are not severe. 20 C.F.R. § 404.1545(a).

Here, the ALJ's residual functional capacity assessment is set forth on pages 22 through 26 of his June 1, 2017, Decision. (Doc. 3 at 22-26). The ALJ's residual functional capacity assessment does not include any discussion of Mellin's HIV impairment. The ALJ erred when he failed to consider Mellin's HIV impairment. The ALJ, on remand, must reassess Mellin's residual functional capacity taking into consideration her HIV impairment.

The Court finds that the ALJ did address Mellin's ability to perform work-related activities on a regular and continuing basis. The phrase "regular and continuing basis" means "8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p at *1. The ALJ assessed Mellin's ability to perform work-related activities "in an 8-hour workday." (Doc. 3 at 22). The ALJ determined the number of hours out of an 8-hour workday that Mellin could walk, stand and sit. *Id*.; see also *Widman v. Astrue*, 302 Fed. Appx. 744, 747-48 (9th Cir. 2008) (unpublished).

## CONCLUSION

The ALJ's decision was not supported by substantial evidence. The ALJ's decision was also based on legal error.

## ORDER

1. Mellin's Motion for Summary Judgment (Doc. 9) is GRANTED.

2. The Commissioner's decision to deny benefits to Mellin is REVERSED.

3. This case is REMANDED for additional administrative proceedings consistent with this Memorandum and Order.

4. The Clerk is directed to enter judgment accordingly.

DATED this 14th day of November, 2018.

John Johnston
United States Magistrate Judge